**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Occupy Columbia; Walid Hakim; Melissa Harmon; Bradley Powell; Timothy Liszewski; David Bland; Ashley Blewer; and David Arroyo, <br><br>                    Plaintiffs, <br><br> v. <br><br> Nikki Haley, Governor of South Carolina; State of South Carolina; Leroy Smith, Director of the South Carolina Department of Public Safety; Zachery Wise, Chief of of the South Carolina Bureau of Protective Services; Nikki Haley, Chairwoman of the South Carolina Budget & Control Board; Harvey S. Peeler, Jr., Chairman of the South Carolina State House Committee; M. Richbourg Roberson, Division of General Services; Sterling L. Morrison, Division of General Services; Curtis Loftis, State Treasurer; Richard Eckstrom, Comptroller General; Hugh Leatherman, Senate Finance Committee; Brian White, House Ways and Means Committee; James Carr; Joe Hodge; Andrew Schmidt; and Marvin Harris, III, <br><br>                    Defendants. | C/A NO. 3:11-cv-03253-CMC <br><br> **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO AMEND ORDER GRANTING PRELIMINARY INJUNCTION OR ALTERNATIVELY TO MODIFY PRELIMINARY INJUNCTION AND PLAINTIFFS' MOTION TO AMEND PRELIMINARY INJUNCTION** |

This matter came before the court on December 22, 2011, for oral argument on competing motions to amend the preliminary injunction, which was issued by this court on December 14, 2011 ("Preliminary Injunction").[1] The Preliminary Injunction enjoined Defendants (1) "from enforcing

---

[1] The court assumes familiarity with the Order granting Plaintiffs' motion for preliminary injunction (Dkt. No. 27) and with the Memorandum Opinion in support of the court's Order (Dkt. No. 28). *See Occupy Columbia v. Haley*, No. 3:11-03253, 2011 WL 6318587 (D.S.C. Dec. 16, 2011).

3:11-cv-03253-CMC     Date Filed 12/22/11     Entry Number 38     Page 2 of 14

any current policy (written or unwritten) against Plaintiffs that prohibits camping or sleeping on the State House grounds, including the 'Conditions for Use of South Carolina State House and Grounds;'" and (2) "from enforcing any current policy (written or unwritten), including Paragraph 8 of the 'Conditions for Use of South Carolina State House and Grounds,' that limits Plaintiffs' access to the State House grounds after 6:00 p.m." Dkt. No. 27 at 7.

The Preliminary Injunction was based on the absence of valid time, place, and manner restrictions prohibiting camping and sleeping on the State House grounds and limiting activities on the State House grounds after 6:00 p.m. *Id.* at 5. In its Memorandum Opinion, the court recognized that the State Budget and Control Board ("Board") has the authority to promulgate regulations to prohibit camping and sleeping on the State House grounds, but that the Board never promulgated any regulations. Dkt. No. 28 at 18-19.

On December 20, 2011, pursuant to S.C. Code Ann. § 1-23-130, the Board met and "unanimously passed an emergency regulation . . . prohibiting use of the State House grounds and all buildings located on the grounds for camping, sleeping, or any living accommodation purposes" ("Regulation 19.480 "). Dkt. No. 32 at 2. Defendants then filed a motion to amend, or otherwise modify, the Preliminary Injunction to lift the prohibition on the enforcement of no-camping or sleeping policies. Dkt. No. 32. Plaintiffs filed a response to Defendants' motion on December 21, 2011. Dkt. No. 35. In addition, Plaintiffs also filed a motion to amend the Preliminary Injunction to enjoin Defendants from enforcing Regulation 19.480. *Id.* On December 22, 2011, Defendants filed a reply brief (Dkt. No. 36) and the court held a hearing on both motions.

For reasons stated below, the court denies both motions.

**I. Plaintiffs' Motion to Amend Preliminary Injunction**

2

Plaintiffs seek to amend the Preliminary Injunction to further enjoin Defendants from enforcing Regulation 19.480, which they contend is an invalid, unenforceable regulation.

**STANDARD**

The court applies the same preliminary injunction standard delineated in the Memorandum Opinion filed December 16, 2011 (Dkt. No. 28). *Occupy Columbia,* 2011 WL 6318587 at *3-4.

**DISCUSSION**

Plaintiffs ask the court to enjoin Defendants from enforcing Regulation 19.480 promulgated by the Board on December 20, 2011, which provides:

> A. "State House grounds" means the steps of the State House Building and the outside areas of the Capitol Complex which is that area bounded by Gervais, Sumter, Pendleton and Assembly Streets.
>
> B. The use of the State House grounds and all buildings located on the grounds[2] for camping, sleeping, or any living accommodation purposes is strictly prohibited. This prohibition is inclusive of sleeping, making preparations to sleep (including the laying down of bedding for the purpose of sleeping), storing personal belongings, making any fire, using any camping tents, using other structures for sleeping, doing any digging or earth breaking, and carrying on cooking activities supportive of camping and living accommodation purposes. This prohibition is strictly applicable regardless of the intent of the participants or the nature of any other activities in which they may also be engaging.
>
> C. The State House Building is open to the general public Monday through Friday from 9:00 a.m. to 5:00 p.m., except for state holidays and other instances in which state government is closed. When a daily session of the General Assembly or of either house thereof convenes on Saturday or Sunday or a daily session extends beyond 5:00 p.m. or convenes after 5:00 p.m., the State House Building remains open to the general public until the session is adjourned.

---

[2] When the court refers to the prohibition on camping and sleeping on the State House grounds and in all buildings located on the grounds, the court will use the phrase "State House grounds."

Emergency Regulation 19.480. Plaintiffs argue that there was no emergency to justify promulgation of an emergency regulation under S.C. Code Ann. § 1-23-130. Section 1-23-130 permits an agency to promulgate an emergency regulation "[i]f an agency finds that an imminent peril to public health, safety, or welfare requires immediate promulgation of an emergency regulation." Plaintiffs ask that the court "find the Regulation invalid and unenforceable because it was promulgated pursuant to emergency procedures when in fact no emergency exists."[3] Dkt. No. 35 at 9.

### A. Likelihood of Success on the Merits.

The court considers whether Plaintiffs are likely to succeed in establishing that Regulation 19.480 is invalid and unenforceable because there was no "imminent peril to public health, safety, or welfare requir[ing] immediate promulgation of an emergency regulation."

First, the court considers the text of § 1-23-130(A), which provides in full:

(A) If an agency finds that an imminent peril to public health, safety, or welfare requires immediate promulgation of an emergency regulation before compliance with the procedures prescribed in this article or if a natural resources related agency finds that abnormal or unusual conditions, immediate need, or the state's best interest requires immediate promulgation of emergency regulations to protect or manage natural resources, the agency may file the regulation with the Legislative Council and a statement of the situation requiring immediate promulgation. The regulation becomes effective as of the time of filing.

S.C. Code Ann. § 1-23-130(A). Plaintiffs argue that "imminent peril" means "one that is apparent, present, immediate, and must be instantly dealt with." Dkt. No. 35 (citing *Middleton v. McNeil*, 541 U.S. 433, 435 (2004)). Defendants contend that the plain and ordinary meaning of the word

---

[3] Plaintiffs requested that, should the court decline to rule on the issue of whether Regulation 19.480 is valid, the court certify the issue to the South Carolina Supreme Court or stay enforcement until Plaintiffs can pursue a declaratory judgment action in state circuit court. Dkt. No. 35 at 9. However, at oral argument, both parties agreed that this court should decide the issue at least under the preliminary injunction standard due to the urgent need for a decision.

"imminent" is "[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous." Dkt. No. 36 at 3 (citing BLACK'S LAW DICTIONARY 750 (6th ed. 1990)). Defendants argue that "the peril to the public health, safety, or welfare need not have already occurred in order for the Board to be justified in promulgating the emergency regulation" or "need not be 'sudden' or 'unexpected.'" Dkt. No. 36 at 2-3.  Defendants also note that "public welfare" is defined as follows:

> The prosperity, well-being, or convenience of the public at large, or of a whole community, as distinguished from the advantage of an individual or limited class. It embraces the primary social interests of safety, order, morals, economic interest, and other non-material and political interests. In the development of our civic life, the definition of "public welfare" has also developed until it has been held to bring within its purview regulations for the promotion of economic welfare and public convenience.

*Id.* at 8 (citing BLACK'S LAW DICTIONARY 1233 (6th ed. 1990)).

The State Budget and Control Board ("Board") found that there is an imminent peril to public health, safety, or welfare that requires promulgation of a regulation prohibiting camping and sleeping on the State House grounds.  The Board filed with the Legislative Council a statement of the emergency situation along with the emergency regulation. Upon filing, an emergency regulation becomes effective.

There appear to be no cases interpreting § 1-23-130.  Plaintiffs rely on the South Carolina Supreme Court's interpretation of the word "emergency" in the South Carolina Procurement Code. *Sloan v. Dept. Of Transportation*, 379 S.C. 160, 172-73, 666 S.E.2d 236, 242-43 (2008).  In *Sloan*, the court considered whether there was an emergency warranting a negotiated procurement of a new contractor for a road-widening project. 379 S.C. at 164–67, 666 S.E.2d at 238–39.  The original contractor had repeatedly failed to meet deadlines and was eventually deemed in default on the

contract. Instead of following usual contractor-replacement procedures, which would have taken several months, the DOT utilized emergency-procurement procedures to hire another contractor. *Id.* The DOT claimed an emergency existed because "there was a five-mile construction zone which . . . had safety concerns." *Id.* at 173, 666 S.E.2d at 243. The South Carolina Supreme Court held that there was not an emergency as defined in that regulation or as the word "emergency" is understood in its plain meaning. *Id.*

The difficulty in applying *Sloan* here is that *Sloan* interpreted the term "emergency" as found in the Procurement Code, not in S.C. Code Ann. § 1-23-130. In fact, § 1-23-130 does not require the finding of an "emergency" but rather a finding of "imminent peril." Moreover, the purposes of the two statutes are quite different. The aim of the pertinent provision of the Procurement Code is to prevent an end run around competitive bidding requirements of state law. In contrast, the purpose of § 1-23-130 is to empower state officials to act when there is an absence of regulations necessary to address an "imminent peril to public health, safety, or welfare." However, the court does agree that the South Carolina Supreme Court's interpretation in *Sloan* is instructive as to the plain meaning of the term "emergency" in the title of § 1-23-130, which describes the statute as one dealing with "Emergency Regulations."

The court first looks to whether the Board's statement submitted to the Legislative Council adequately describes facts and circumstances which support a finding that imminent peril exists. *See Op. Att'y Gen., 2005 WL 1983359 (S.C.A.G. 2005) (citing, e.g.*, *Premier Games, Inc. v. State*, 761 So.2d 707 (La. App. 1 Cir. 2000) (declaration of emergency in rule contemplates description of facts and circumstances which justify the conclusion that imminent peril exists); *Mauzy v. Gibbs*, 723 P.2d 458 (Wash. App. 1986) (emergency regulation failed to set forth sufficient specific reasons

6

for finding of emergency situation)). In its findings, the Board indicates that this court's Order dated December 14, 2011, effectively invalidated the Board's presumed authority to regulate camping and sleeping on the State House grounds without promulgation of regulations. In light of the Order, and the fact that a group of individuals is currently camping and sleeping on the State House grounds, the Board found it necessary to promulgate an emergency regulation for the following reasons:

> The Board recognizes that the presence of persons living on the State House grounds increases the opportunities for criminal conduct and that persons when asleep in tents or on the ground are more vulnerable to criminal attack as well as the commission of property crimes. . . .
>
> The Board further recognizes that there exists a significant risk of liability arising from the use of the State House grounds and buildings for camping, sleeping, and living accommodation purposes. . . .
>
> The Board further recognizes that the presence of persons living on the State House grounds has an impact on the public health. . . .

Dkt. No. 32-1 at 2-3.

Faced with the Preliminary Injunction, the Board had four choices: (1) appeal; (2) begin the process of promulgating a regulation pursuant to the South Carolina Administrative Procedures Act; (3) enact an emergency regulation pursuant to § 1-23-130; or (4) permit unlimited camping and sleeping on the State House grounds by persons engaged in expressive activities.[4] The Board elected to proceed with options two and three. It "also authorized the Division of General Services to draft permanent regulations for the use of the State House grounds, steps, and lobby areas." Dkt. No. 32 at 6. Because such a process would require approximately 120 days, the Board utilized § 1-23-130 to enact an interim "emergency" regulation, Regulation 19.480.

---

[4] The court notes that the time for appeal has not run.

The Board concluded an emergency regulation was necessary because it found imminent peril due to crime, premises liability, and public health risks associated with camping and sleeping on the State House grounds. The court agrees that the result of its Order granting Preliminary Injunction was to confirm the Board lacked authority to prohibit camping and sleeping on the State House grounds without valid time, place, and manner restrictions. Because any number of groups could simultaneously seek to engage in expressive conduct involving camping and sleeping on the State House grounds, there existed a need for interim time, place, and manner restrictions pending promulgation of permanent regulations.

There is no evidence that the Board's promulgation of Regulation 19.480 was arbitrary, capricious, an abuse of discretion, or not based on substantial evidence. *See Op. Att'y Gen., 2005 WL 1983359; Philadelphia Citizens in Action v. Schweiker*, 669 F.2d 877 (3d Cir. 1982) (upholding federal agency's decision that standards for emergency rule making are met unless arbitrary, capricious or abuse of discretion). The court, therefore, finds that Plaintiffs are not likely to succeed in establishing that Regulation 19.480 is invalid under state law.

Plaintiffs do not argue that Regulation 19.480 is defective as a valid time, place, and manner restriction on First Amendment expression. That is probably because Regulation 19.480 is virtually identical to the National Park Service's prohibition on camping in Lafayette Park, which was found to be a valid time, place, and manner restriction by the United States Supreme Court in *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984). In *Clark*, the Court evaluated whether the regulation was a reasonable time, place, and manner restriction and whether the regulation on conduct (with an incidental burden on speech) met the four-factor standard delineated in *United States v. O'Brien*, 391 U.S. 367 (1968).

**Time, place, manner restriction**. Regulations of time, place, and manner must be content-neutral, narrowly tailored to serve a significant state interest, and leave open ample, alternative channels of communication. *Clark*, 468 U.S. at 293-94; *Grass Roots Organizing Workshop (GROW) v. Campbell*, 704 F. Supp. 650 (D.S.C. 1989) ("*GROW II*").

*Content Neutral.* The court finds, and Plaintiffs concede, that Regulation 19.480 is content neutral. The text is broad and prohibits all individuals and groups from camping or sleeping on the State House grounds and in all buildings located on the grounds. The restriction is a regulation of conduct and does not target a particular message.

Plaintiffs argue that Regulation 19.480 was motivated by "Defendants' frustration with Occupy Columbia." Dkt. No. 35 at 8. Courts are not in the business of evaluating motives of legislators in evaluating time, place, and manner restrictions. *See O'Brien* ("Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."); *Wall Distributors, Inc. v. Newport News, Va.*, 782 F.2d 1165, 1170 (4th Cir. 1986) ( "[C]ourts must eschew altogether the guesswork of speculating about the motive of lawmakers.") (quotations omitted)*;Grass Roots Organizing Workshop (GROW) v. Campbell*, 704 F. Supp. 644, 648 (D.S.C. 1988) (finding that court may not consider whether Budget and Control Board may have adopted new policy regulating conduct on the State House grounds in order to prevent the plaintiff from displaying its sign).

*Significant State Interest.* Defendants argue that the emergency regulation serves the following significant and substantial government interests:

> Camping, sleeping, or otherwise living at the State House grounds and building raises an imminent peril based on increased opportunities for criminal conduct and public safety incidents attendant to such conduct, as well as the liability resulting from such incidents. In particular, the Board expressed concerns regarding "recent

> confrontations involving the group of individuals currently living on the State House grounds which has caused the group to form a 'protection unit' to stand watch and defend the group during night time hours when the individuals are sleeping." The Board stated "that the use of such a 'protection unit' raises serious public safety concerns in addition to public liability concerns that need to be addressed immediately."
>
> Camping, sleeping, or otherwise living at the State House grounds and buildings raises an imminent peril given the significant risk of liability arising from the use of the State House property for camping, sleeping, and living accommodation purposes. The Board recognized that under premises liability laws, the State, as the property owner, has a duty to reasonably provide for the safety and security of those persons lawfully on its property. The habitation of the grounds for camping, sleeping, and living accommodation purposes increases the risk of liability.
>
> Camping, sleeping, or otherwise living at the State House grounds and buildings raises an imminent peril based on the impact of such conduct on public health, arising from continuous storage and preparation of food, attracting wildlife, and the sanitation issues attendant to camping, sleeping, or living on the grounds.

Dkt. No. 32 at 7.

The court concludes that the Board has significant government interests in avoiding crime, potential premises liability, and public health risks associated with unlimited camping and sleeping by groups engaged in expressive activities on the State House grounds.

*Narrowly Tailored.* The court finds that Regulation 19.480 is narrowly tailored to prevent the risks associated with unlimited camping and sleeping by groups engaged in expressive activities on the State House grounds. Although Regulation 19.480 prohibits all camping and sleeping on the State House grounds, Plaintiffs have not shown that the state's interests would be served by a more narrow restriction on activities associated with camping and sleeping.

*Alternative Channels for Communication.* The court finds that Plaintiffs have ample, alternative channels to communicate their message. Should the State enforce Regulation 19.480, Plaintiffs will not be able to continue camping and sleeping on the State House grounds. Plaintiffs

may, however, remain on the grounds all night and continue their 24-hour occupation. Although their expression may be limited based on difficulties associated with a 24-hour presence without certain supplies that facilitate continuous occupation, Plaintiffs have alternative channels to communicate their message that do not involve camping or sleeping on the State House grounds.

**O'Brien.** In *Clark*, the Supreme Court also evaluated the National Park Service's prohibition on camping under *O'Brien*, noting that the *O'Brien* standard "is little, if any different from the standard applied to time, place, or manner restrictions." 468 U.S. at 298. As a regulation of conduct that incidentally burdens speech, *O'Brien* requires that the court consider whether (1) the state has the power to regulate the conduct; (2) the regulation advances a substantial or important government interest; (3) the interest is unrelated to suppressing freedom of expression; and (4) the incidental burden on speech is no more than necessary to achieve the interest. 391 U.S. 367 (1968).

S.C. Code Ann. §10-1-30 provides that the Budget and Control Board may promulgate regulations regarding use of State House grounds to ensure "that the public health, safety, and welfare will be protected in the use of the areas." The court finds, therefore, that state has the power to regulate camping and sleeping on the State House grounds.

For the reasons above, the court finds that Regulation 19.480 advances substantial and important government interests unrelated to suppressing freedom of expression. Although it may incidentally burden speech, Regulation 19.480 prohibits all camping and sleeping on the State House

grounds, without exception.[5] Finally, the court finds that the incidental burden on speech is no more than is necessary to achieve the State's interests.

The court, therefore, concludes that Plaintiffs are not likely to succeed on the merits of showing that Regulation 19.480 constitutes an invalid time, place, and manner restriction of their First Amendment rights.

### B. Irreparable Harm

As explained in the court's prior Order, "in the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits of plaintiff's First Amendment claim." *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Because the court finds that Plaintiffs are not likely to succeed in establishing that Regulation 19.480 violates Plaintiffs' First Amendment rights, the court finds that Plaintiffs will not be irreparably harmed if Plaintiffs' motion to amend the Preliminary Injunction is denied.

### C. Balance of the Equities

The State and its agencies must be able to respond to new situations as they arise. In this case, the Board reacted to a new situation and promulgated an emergency regulation to prohibit camping and sleeping on the State House grounds. The State has a valid interest in reducing the risk of harm associated with camping and sleeping on the State House grounds. Although Plaintiffs do not agree with the content of Regulation 19.480, or the fact that it is an emergency regulation

---

[5] The court will not substitute its judgment for that of the Board on how to limit the adverse effects of camping and sleeping on the State House grounds. *See Clark*, 468 U.S. at 299 (refusing to substitute its judgment for that of Park Service as to "how much protection of park lands is wise and how that level of conservation is to be attained.").

effective immediately, the Board has directed the Division of General Services to begin drafting permanent regulations with the same effect. The end result – a prohibition on camping and sleeping on the State House grounds – appears inevitable.[6]

With the promulgation of Regulation 19.480, Plaintiffs now can be certain that activities related to camping, sleeping, and living on the State House grounds are prohibited. The balance of the equities tips in favor of Defendants.

### D. Public Interest

The public interest in the right of the people to freedom of expression is protected by the First Amendment to the United State Constitution. This right may only be limited by reasonable time, place, and manner restrictions. The time, place, and manner restrictions of Regulation 19.480 have previously been approved by the United States Supreme Court in *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

The public has an interest in having a properly-maintained State House grounds that may be enjoyed by everyone, including those not involved with Occupy Columbia. The public also an interest in valid, publicly-available regulations governing the use of the grounds. Regulation 19.480 serves these various interests.

Accordingly, Plaintiffs' motion to amend the Preliminary Injunction to enjoin the enforcement of Regulation 19.480 is denied.

## II. Defendants' Motion to Amend Preliminary Injunction

---

[6] The parties informed the court that there likely will be a period of thirty days after the expiration of Regulation 19.480 and before a non-emergency regulation can be promulgated. Defendants have not determined what, if any, remedies are available to avoid a thirty-day period where no regulations would prohibit camping or sleeping on the State House grounds. The thirty-day period is not, however, relevant to the outcome of the motions pending before the court.

Defendants also filed a motion to amend the Preliminary Injunction. Defendants argue that the Preliminary Injunction is no longer necessary with respect to camping because the State has a valid time, place, and manner restriction that prohibits camping and sleeping on the State House grounds. Amendment of the Preliminary Injunction in light of Regulation 19.480 is unnecessary. The Preliminary Injunction enjoined the enforcement of any then "current policy" prohibiting camping and sleeping and does not apply to enforcement of a new policy or regulation.

Defendants' motion to amend the Preliminary Injunction is, therefore, denied.

## CONCLUSION

For the reasons stated above, the court denies Plaintiffs' motion to amend Preliminary Injunction (Dkt. No. 35) and Defendants' motion to amend order granting Preliminary Injunction or, alternatively, motion to modify Preliminary Injunction (Dkt. No. 32).

**IT IS SO ORDERED.**

                                            S/ Cameron McGowan Currie
                                            CAMERON MCGOWAN CURRIE
                                            UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
December 22, 2011