**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Occupy Columbia; Walid Hakim; Melissa Harmon; Bradley Powell; Timothy Liszewski; David Bland; Ashley Blewer; David Arroyo; Gadson Bennett; Joshua Anderson; Sebastian Pena; Justine Woods; Johanna Caple; John Rutledge; and L. Shaw Mitchell, <br><br> Plaintiffs, <br><br> v. <br><br> Nikki Haley, Governor of South Carolina; Leroy Smith, Director of the South Carolina Department of Public Safety; Zachery Wise, Chief of Police of the South Carolina Bureau of Protective Services; James Carr; Joe Hodge; Andrew Schmidt; and Marvin Harris, III, <br><br> Defendants. | C/A NO. 3:11-cv-03253-CMC <br><br> **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

This matter is before the court on Defendants' motion to dismiss the Third Amended Complaint or for judgment on the pleadings pursuant to Rules 12(b) and 12(c) of the Federal Rules of Civil Procedure. Defendants argue that Plaintiffs' claims for injunctive relief are moot and that Defendants have qualified immunity as to Plaintiffs' claims for money damages. For reasons explained below, the court grants Defendants' motion as to Plaintiffs' claims for injunctive relief and denies the motion as to Plaintiffs' claims for money damages.

**STANDARD**

A motion under Federal Rule of Civil Procedure 12(c) is assessed under the same standards as a Rule 12(b)(6) motion. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion under

Federal Rule of Civil Procedure 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiffs cannot prove any set of facts in support of their claims that entitles them to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Although the court must take the facts in the light most favorable to the plaintiffs, it "need not accept the legal conclusions [the plaintiffs would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that the plaintiffs are not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Markari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, the plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoted in *Giarratano*, 521 F.3d at 302).

As recently explained by the Fourth Circuit,

> "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston–Salem*, 85 F.3d 178, 181 (4th Cir.1996). One such defense is that of qualified immunity. *Jenkins [v. Medford]*, 119 F.3d 1156,] 1159 [(4th Cir. 1997)].

*Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). On a 12(b)(6) motion, "the facts set forth are from the vantage point of [Plaintiffs], with all reasonable inferences drawn in [their] favor." *Tobey v. Jones*, __ F.3d __, 2013 WL 286226, *1 (4th Cir. Jan. 25, 2013).

2

# BACKGROUND

**Allegations.**[1] Occupy Columbia was organized in early October 2011, and protestors began occupying the State House grounds on October 15, 2011. Third Am. Compl. ¶¶ 31-33. Plaintiffs' "occupation" consisted of "protesting around-the-clock at the site." *Id.* ¶ 34. Plaintiffs allege that "[p]hysically occupying the State House grounds, including sleeping overnight on the grounds, is the only effective manner in which Occupy Columbia members can express their message of taking back our state to create a more just, economically egalitarian society." *Id.* ¶ 35. They allege that Occupy Columbia is a "peaceful protest," causing no disruption to the state. *Id.* ¶ 41.

Plaintiffs allege that they "inquired as to the permitting requirements" for the State House grounds, and were "given a handout by Defendant Division of General Services and told they would probably not receive a permit if they applied."[2] *Id.* ¶ 50. Plaintiffs were later informed "that under no circumstances would any permission to sleep or use tents on the State House grounds have been given to the Plaintiffs." *Id.* Plaintiffs allege that "no application for a permit is available on any

---

[1] Both sides rely on affidavits purportedly incorporated by reference in the Third Amended Complaint. In order to avoid converting this motion to one for summary judgment prior to substantial discovery, the court relies solely on the allegations in the Third Amended Complaint and those documents that are integral to the complaint: (1) Senator Harvey Peeler Letter to Governor Haley (Third Am. Compl. ¶ 60; Dkt. No. 42-1 at 5-6); (2) Governor Haley Letter to Smith and Wise (*Id.* ¶ 61; Dkt. No. 42-1 at 2-3); and (3) "Conditions for Use of South Carolina State House and Grounds" (*Id.* ¶ 47; Dkt. No. 42-2 at 32-33). *See Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (court may, on a 12(b)(6) motion, "also consider documents attached to a complaint . . . so long as they are integral to the complaint and authentic."). Defendants do not challenge the authenticity of those documents. Even were the court to consider the affidavits, the court would reach the same result as the affidavits support Plaintiffs' position that they were not camping or sleeping at the time of their arrests, and that they had removed all of their supplies from the State House grounds prior to their arrests.

[2] The Division of General Services "maintains the grounds surrounding the State House." Dkt. No. 96 ¶¶ 16-18 (Defs' Answer).

3

public source such as the internet or at the front counter of the Division of General Services." *Id.* ¶ 57.

After "occupying" the State House grounds for over thirty days, Plaintiffs "were forcibly seized, arrested, and removed" from the premises on November 16, 2011. *Id.* ¶ 53. Plaintiffs allege that their removal was prompted by a letter from Senator Harvey Peeler "imploring [Governor Haley] to remove Occupy Columbia [because] the 'Governor's Carol Lighting' of the State Christmas Tree would be more pleasant without protestors present." After receiving Peeler's letter dated November 16, 2011, Governor Haley issued a letter to the Director of the Department of Public Safety (Director Smith) and the Chief of Police of the Bureau of Protective Services (Chief Wise) and held a press conference "set[ting] a curfew to 6:00 p.m." that same date. *Id.* ¶¶ 60-61. In her letter to Defendants Smith and Wise, Governor Haley cited a Budget and Control Board policy "requir[ing] any individual or organization that wishes to remain at the Statehouse after 6:00 p.m. to receive written permission from the agency." Dkt. No. 42-1 at 2. Governor Haley explained that "[g]roups have uniformly followed this content-neutral policy for years" and that Occupy Columbia had failed to seek or receive such permission, "yet they have essentially taken to living on Statehouse property." *Id.* After explaining problems associated with Occupy Columbia, such as damage to the State House grounds and the need for extra security, Governor Haley ordered Defendants Smith and Wise to "remov[e] any individual associated with the 'Occupy Columbia' group, as well as his or her belongings, who remains on Statehouse grounds after 6:00 p.m. without written authorization from the Budget and Control Board." *Id.* at 3. Later that evening, "nineteen [O]ccupy protestors

4

were arrested" for trespassing and taken to the Alvin S. Glenn Detention Center.[3]  Third Am. Compl. ¶¶ 61, 85.  They were released on personal recognizance bonds early the following morning.  *Id.* ¶ 61.  The charges against all protestors were later dismissed.  *Id.*

Plaintiffs allege that there were no regulations for use of the State House grounds.  *Id.* ¶ 17.  "Instead, the Budget and Control Board claimed that a document entitled 'Conditions for Use of South Carolina State House and Grounds' had the force of law and authorized the arrests of the Plaintiffs."  *Id.* ¶ 18.  Paragraph 8 of the Conditions provides:

> All activities on the grounds or in the State House must strictly adhere to the times as scheduled to insure that the activities will not conflict with any other scheduled activities.  Activities will not be scheduled beyond 5:00 p.m. in the State House and 6:00 p.m. on the grounds unless special provisions in writing have been made to extend the time.

Dkt. No. 42-2 at 32 ("6:00 p.m. policy").  "At the time Plaintiffs were arrested, Plaintiffs were assembled on the state house grounds, protesting and petitioning our government, and Plaintiffs were not violating any law."  Third. Am. Compl. ¶ 83.

**Preliminary Injunction**.[4]  This action first came before this court on Plaintiffs' motion to preliminarily enjoin Defendants from interfering with Plaintiffs' 24-hour occupation of the State House grounds, including sleeping on the State House grounds, and the use of sleeping bags and

---

[3] In opposition to Plaintiffs' motion for preliminary injunction, Governor Haley stated that Plaintiffs were arrested for trespassing on State House property "in violation of, *inter alia*, South Carolina Code §§ 10-11-20 ('Unauthorized use of State House or grounds') and 10-11-30 ('Trespassing, damaging or defacing certain state property')."  Dkt. No. 17 at 3.

[4] The court assumes familiarity with the Order granting Plaintiffs' motion for preliminary injunction (Dkt. No. 27) and with the Memorandum Opinion in support of the court's Order (Dkt. No. 28).  *See Occupy Columbia v. Haley*, 866 F. Supp. 2d 545 (D.S.C. 2011).  The court also assumes familiarity with the Order denying cross motions to amend the preliminary injunction (Dkt. No. 38).  *See Occupy Columbia v. Haley*, No. 3:11-03253, 2011 WL 6698990 (D.S.C. Dec. 22, 2011).

5

tents. In response to Plaintiffs' motion for preliminary injunction, the Board Defendants argued that the Board was authorized by statute (S.C. Code Ann. §10-1-30[5]) to create regulations or restrictions regarding use of the State House grounds, and that it created restrictions contained in the Conditions, including Condition 8. Dkt. No. 42-2 at 32. The Board Defendants also argued that the Board had the authority to prohibit camping and sleeping on the State House grounds under §10-1-30, and that it had an unwritten rule prohibiting such conduct.

The court, therefore, considered whether the 6:00 p.m. policy and the unwritten prohibition on camping and sleeping were valid time, place, and manner restrictions on Plaintiffs' First Amendment rights. The court concluded that they were not. *See* Dkt. No. 28 at 20-23. In light of this conclusion, the court found that Plaintiffs had made a clear showing that they would succeed in challenging the unwritten policy prohibiting camping and sleeping and the purported policy restricting activities on the State House grounds after 6:00 p.m. without written authorization. As the Preliminary Injunction Order explains, the Board Defendants may regulate camping and sleeping

---

[5] Section 10-1-30 provides,

> The Director of the Division of General Services of the State Budget and Control Board may authorize the use of the State House lobbies, the State House steps and grounds, and other public buildings and grounds in accordance with regulations promulgated by the board. The director shall obtain the approval of the Clerk of the Senate before authorizing any use of the Gressette Building and shall obtain the approval of the Clerk of the House of Representatives before authorizing any use of the Blatt Building. The regulations must contain provisions to insure that the public health, safety, and welfare will be protected in the use of the areas including reasonable time, place, and manner restrictions and application periods before use. If sufficient measures cannot be taken to protect the public health, safety, and welfare, the director shall deny the requested use. Other restrictions may be imposed on the use of the areas as are necessary for the conduct of business in those areas and the maintenance of the dignity, decorum, and aesthetics of the areas.

S.C. Code Ann. § 10-1-30.

on the State House grounds with reasonable time, place, and manner restrictions, but may not regulate this conduct through an unwritten or informal rule. The court, therefore, granted Plaintiffs' motion for preliminary injunction. Dkt. No. 27 at 7 ("Preliminary Injunction").[6]

**Events Following Preliminary Injunction.** On December 20, 2011, pursuant to S.C. Code Ann. § 1-23-130, the Board met and "unanimously passed an emergency regulation . . . prohibiting use of the State House grounds and all buildings located on the grounds for camping, sleeping, or any living accommodation purposes" ("Regulation 19.480").[7] Dkt. No. 32 at 2. Based on Regulation 19.480, the parties filed cross-motions to modify the Preliminary Injunction. The court denied both motions as amendment of the Preliminary Injunction was unnecessary because the Preliminary Injunction only enjoined "any current policy," and not new regulations, such as Regulation 19.480. The court further found that Regulation 19.480, which prohibits camping and sleeping activities on the State House grounds, was a valid time, place, and manner restriction because it was virtually identical to the camping prohibition approved by the United States Supreme Court in *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

On January 5, 2012, Plaintiffs filed a Second Amended Complaint adding a claim for damages under 42 U.S.C. § 1983 against certain Defendants. Dkt. No. 42. On January 19, 2012, the Board Defendants filed a motion to dismiss the Second Amended Complaint pursuant to Rule

---

[6] The Preliminary Injunction enjoined Defendants (1) "from enforcing any current policy (written or unwritten) against Plaintiffs that prohibits camping or sleeping on the State House grounds, including the 'Conditions for Use of South Carolina State House and Grounds;'" and (2) "from enforcing any current policy (written or unwritten), including Paragraph 8 of the 'Conditions for Use of South Carolina State House and Grounds,' that limits Plaintiffs' access to the State House grounds after 6:00 p.m." Dkt. No. 27 at 7.

[7] Regulation 19.480 was later codified as S.C. Code Ann. § 10-1-35.

7

12(b)(1), arguing that Regulation 19.480 moots this action as to the Board Defendants. Dkt. No. 49. Briefing of that motion revealed that the Board revised its Conditions ("Revised Conditions") to delete references to specific time limitations.[8] On August 17, 2012, the court granted the Board Defendants' motion to dismiss because Plaintiffs' claims for injunctive relief were mooted by § 10-1-35 and the removal of the 6:00 p.m. policy. Dkt. No. 85.

On September 10, 2012, the court granted Plaintiffs' motion to amend to add additional Plaintiffs. Dkt. No. 90. Plaintiffs filed the Third Amended Complaint on September 20, 2012. Dkt. No. 94. On October 1, 2012, Defendants filed the instant motion. Dkt. No. 98.

## DISCUSSION

### I. Mootness

The Board Defendants were previously dismissed from this action because the court concluded that Plaintiffs' claims for injunctive relief were moot based on enactment of a statute prohibiting camping and sleeping on the State House grounds and the removal of the 6:00 p.m. policy from Condition 8. Defendants argue that Plaintiffs' claims for injunctive relief against them should be dismissed as moot for the same reasons, as those claims are the same as the previously-dismissed claims against the Board Defendants. For reasons stated in the court's order granting the Board Defendants' motion to dismiss based on mootness, the court grants Defendants' motion to dismiss Plaintiffs' claims for injunctive relief. *See* Dkt. No. 85.

---

[8] Revised Condition 8 provides that "[a]ll activities on the grounds or in the State House must strictly adhere to the times as scheduled to insure that the activities will not conflict with any other scheduled activities." Dkt. No. 66-1 at 1. It drops the following language found in the prior version: "Activities will not be scheduled beyond 5:00 p.m. in the State House and 6:00 p.m. on the grounds unless special provisions in writing have been made to extend the time."

**II. Qualified Immunity**

Defendants argue that Plaintiffs' claims for money damages should be dismissed because Defendants are entitled to qualified immunity. "Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ridpath v. Board of Governors Marshall University*, 447 F.3d 292, 306 (4th Cir. 2006) (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999)) (internal quotation marks omitted). "To escape dismissal of a complaint on qualified immunity grounds, plaintiffs must (1) allege a violation of a right (2) that is clearly established at the time of the violation." *Evans v. Chalmers*, __ F.3d __, 2012 WL 6554846, *5 (4th Cir. Dec. 17, 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Stated another way, "[o]fficials will receive immunity unless the § 1983 claim satisfies a two-prong test:" (1) the allegations, when viewed in plaintiffs' favor, show that a government official violated a constitutional right and (2) that "right was 'clearly established' such that a reasonable person would have known his acts or omissions violated that right." *Brockington*, 637 F.3d at 506 (citing *Ridpath*; 447 F.3d at 306; *Saucier v. Katz*, 533 U.S. 194, 201 (2001), modified by *Pearson*, 555 U.S. 223 (setting up this two-pronged framework)). It is within the court's discretion to decide which prong is analyzed first. *Pearson*, 555 U.S. at 236.

Defendants argue that they are entitled to qualified immunity because Plaintiffs did not have "a 'clearly established' right to live continuously on the State House grounds . . . for an indefinite period of time without restriction" at the time of their arrests. Dkt. No. 98 at 17. The court agrees with Defendants that it was not clearly established at the time of Plaintiffs' arrests that there was a

constitutional right to camp, sleep, or live continuously on the State House grounds.[9] This argument, however, does not end the inquiry. That is because the Third Amended Complaint alleges that "[a]t the time Plaintiffs were arrested, Plaintiffs were assembled on the state house grounds, protesting and petitioning our government, and Plaintiffs were not violating any law." Third Am. Compl. ¶ 83. And Governor Haley's letter, which led to the arrests, did not order arrests only of persons camping, sleeping, or living on the State House grounds. Instead, it directed Defendants Smith and Wise to "remov[e] any individual associated with the 'Occupy Columbia' group, as well as his or her belongings, who remains on Statehouse grounds after 6:00 p.m. without written authorization from the Budget and Control Board."[10]

### A. Constitutional Violation

As explained above, the Third Amended Complaint alleges that Plaintiffs were arrested when they assembled on the State House grounds after 6:00 p.m. to protest and petition the government. Viewing the facts alleged from the vantage point of Plaintiffs, with all reasonable inferences drawn in their favor, the court considers whether Plaintiffs' constitutional rights were violated when they were arrested for their presence and protests on the State House grounds after 6:00 p.m.

---

[9] Plaintiffs have not identified, and the court is not aware of, any case prior to Plaintiffs' arrests from the United States Supreme Court or the Fourth Circuit that clearly establishes a First Amendment right to camp or sleep on public property in connection with protests. *Cf. Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (assuming without deciding that "overnight sleeping in connection with the demonstration is expressive conduct protected to some extent by the First Amendment").

[10] While the court does not consider the affidavits filed with the removal papers and with the motion for preliminary injunction to be part of the Third Amended Complaint, it notes that one affidavit supports the allegations of the Third Amended Complaint. Specifically, one Plaintiff averred that, on the day of their arrests, they had removed "all supplies" that were on the State House grounds by 5:15 p.m. Dkt. No. 1-7 at 7. This allegation was not disputed by Defendants at the preliminary injunction stage, nor has it been disputed during briefing of the present motion.

The State House grounds are public property, and a public forum. *Edwards v. South Carolina*, 372 U.S. 229, 230 (1963) ("the South Carolina State House grounds [are] an area of two city blocks open to the general public"). In traditional public forums, government may restrict speech as long as the restriction is content neutral, narrowly tailored to serve a significant governmental interest, and leaves open ample alternative channels for communication of the information. *See, e.g.*, *Clark*, 468 U.S. at 293, 295; *Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 384 (4th Cir. 2008). "In addition, content-based restrictions may be imposed in a traditional public forum where there is 'a clear and present danger that [the speech] will bring about the substantive evils that [government] has a right to prevent,' . . . and where the restrictions are narrowly drawn to serve that compelling state interest." *Id.* (internal citations omitted). *See also Christian Legal Soc. Chapter of the Univ. of California, Hastings College of the Law v. Martinez*, __ U.S. __, 130 S. Ct. 2971, 2984 (2010) (explaining that content-based restrictions are subject to strict scrutiny). Thus, absent a valid time, place, and manner restriction, or a content-based restriction that survives strict scrutiny, Plaintiffs had a right to peacefully assemble on the State House grounds after 6:00 p.m.

Defendants argue that Condition 8 was a valid time, place, and manner restriction that required Plaintiffs to receive permission in writing to remain on the State House grounds after 6:00 p.m. Condition 8, however, was not a time restriction on events or protests on the State House grounds at nighttime.[11] The text of Condition 8 neither purported to close the State House grounds

---

[11] In granting Plaintiff's motion for preliminary injunction, the court concluded that Plaintiffs had shown a likelihood of success on the merits of establishing that Condition 8 was not a valid time restriction because, *inter alia*, it was unpublished and unavailable to the public, it was not evenly applied, and it provided unbridled discretion to General Services to the extent it was a permit or

(continued...)

to protestors after 6:00 p.m. "unless special provisions in writing" were obtained, nor to authorize the arrests of protestors for their presence on the grounds after 6:00 p.m. if they did not receive "special provisions in writing." Condition 8 provided that *reservations* for activities after 6:00 p.m. would not be granted "unless special provisions in writing" were made to extend the time.[12] And, the Board Defendants have previously stated that General Services – a division of the Board that provides facilities management for the State House grounds – did not have a time restriction on use of the grounds, nor a permitting requirement, through Condition 8 or otherwise. Rather, the Board Defendants described General Services' role in authorizing the use of the State House grounds as "an entity that takes reservations." Dkt. No. 13 at 9. The court, therefore, finds that there was no time restriction on protests on the State House grounds.[13] Accordingly, arresting Plaintiffs for trespass for violating a non-existent time restriction while protesting on the State House grounds violated their First Amendment rights.[14] Further, the court finds that, to the extent Governor Haley created a new restriction, that restriction was also invalid because, reading Plaintiffs' allegations in

---

[11](...continued)
licensing scheme.

[12] Condition 8 does not explain from whom special provisions in writing could be obtained.

[13] After the court granted Plaintiff's Motion for Preliminary Injunction, the State revised Condition 8 and eliminated the reference to any time limitations on reservations. The State did not adopt any other time limitation by regulation or statute. Thus, even now, there is no prohibition on protests after 6:00 p.m.

[14] The court makes no determination as to whether Plaintiffs' Fourth Amendment rights were violated. Defendants have not argued that there was no Fourth Amendment violation or that they are entitled to qualified immunity on Plaintiffs' Fourth Amendment claims. Rather, Defendants note that, based on their understanding of the pleadings, Plaintiffs' Fourth Amendment claims are wholly dependent upon their First Amendment claims. Dkt. No. 98 at 6 n.3. Although Plaintiffs generally assert that there was no probable cause, *see* Dkt. No. 108 at 11, Plaintiffs have not briefed the issue.

their favor, it was limited to a particular group, in violation of the First Amendment's prohibition on viewpoint discrimination. *See Rosenberger v. Rector & Visitors of Univ. Of Virginia*, 515 U.S. 819 (1995) (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 96 (1972) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys.")).

### B. Clearly Established

The second prong of the qualified immunity analysis requires the court to consider "whether the constitutional right violated 'was clearly established in the specific context of the case – that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012) (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)). *See also Lefemine v. Wideman*, 672 F.3d 292, 298 (4th Cir. 2012) (internal quotations omitted), *rev'd on other grounds*, __ U.S. __, 133 S.Ct. 9 (2012) ("[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law."). "[I]t is not required that the exact conduct has been found unconstitutional in a previous case." *Brockington v. Boykins*, 637 F.3d 503, 508 (4th Cir. 2011) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("officials can still be on notice that their conduct violates established law even in novel factual circumstances.")). Whether a right is clearly established depends on the law of the relevant jurisdiction, here decisions by the Fourth Circuit and the United States Supreme Court. *Lefemine*, 672 F.3d at 298.

The court, therefore, determines whether it was clearly established that arresting Plaintiffs for their presence and protests with Occupy Columbia on the State House grounds after 6:00 p.m. was a violation of their First Amendment rights. As recently articulated by the Fourth Circuit, "[a]

bedrock First Amendment principle is that citizens have a right to voice dissent from governmental policies." *Tobey*, 2013 WL 286226 at *8 (citing *Mills v. Alabama*, 384 U.S. 214, 218 (1996) ("Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs.")). That right to voice dissent is protected in a public forum, such as the State House grounds, absent reasonable time, place, and manner restrictions. *See Edwards*, 372 U.S. at 230; *Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 384 (4th Cir. 2008) (citing *Clark*, 468 U.S. at 293, 295). "[G]overnment may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Police Department of Chicago v. Mosley*, 408 U.S. 92, 96 (1972) ("And it may not select which issues are worth discussing or debating in public facilities. There is an 'equality of status in the field of ideas,' and government must afford all points of view an equal opportunity to be heard. Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say."). *See also Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002) ("government has no power to restrict expression because of its message, its ideas, its subject matter, or its content"). It is, therefore, clearly established that, absent a valid time, place, and manner restriction, arresting Plaintiffs for their presence and protests with Occupy Columbia on the State House grounds after 6:00 p.m. violated Plaintiffs' First Amendment rights.

It is evident that there was no time restriction on protesting after 6:00 p.m. on the State House grounds. Defendants, however, rely on Condition 8 as justification for Plaintiffs' arrests based on their presence on the grounds after 6:00 p.m. without "special provisions in writing," just as

Governor Haley relied on Condition 8 in her letter ordering their arrests.[15] Defendants argue that it was not clearly established that Condition 8 was an invalid time, place, and manner restriction because no court had ruled that Condition 8 was invalid prior to Plaintiffs' arrests. Defendants also argue that it was reasonable to believe that Condition 8 was a content-neutral and narrowly-tailored restriction on speech that left open ample alternative channels of communication.[16]

Condition 8, as interpreted by Governor Haley, was a permitting or licensing scheme that closed the State House grounds to protestors after 6:00 p.m. unless permission in writing, *i.e.*, a permit, was obtained from General Services. Such an interpretation, however, is contrary to the plain language of Condition 8, which set up a reservation requirement for exclusive use and not a permit or licensing requirement for activities after 6:00 p.m. Even the Board agreed that General Services did not have a time restriction on use of the grounds, nor a permitting requirement through Condition 8 or otherwise.

Even assuming that Condition 8 was correctly interpreted by Governor Haley to close the grounds to protestors after 6:00 p.m. unless permission in writing was obtained from General Services, the court must also consider whether Condition 8 contained "adequate standards to guide the official's decision" to issue a permit. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323

---

[15] In response to Plaintiffs' motion for preliminary injunction, Defendants also relied on an unwritten policy prohibiting camping and sleeping. Defendants do not rely on this unwritten policy in their current motion to dismiss. Reliance on such policy would, in any event, be inconsistent with the Governor's letter explaining her decision to restrict Plaintiffs' access to the State House grounds, in which she cites only to a policy requiring written permission from the "agency."

[16] Defendants argue that Condition 8 appeared to be content-neutral and applicable to all groups seeking to hold events after 6:00 p.m.; to be narrowly-tailored to serve the purpose of preserving the State House grounds and maintaining health and safety concerns on the property; and to leave open ample, alternative channels of communication, as there are numerous other parks and areas within Columbia for Plaintiffs to exercise their First Amendment rights.

(2002) (requiring that permit or licensing schemes "contain adequate standards to guide the official's decision"). There is nothing in Condition 8 or in the Conditions explaining what standards were to be used to determine whether to issue a permit to protest after 6:00 p.m.[17] Defendants have not directed the court to any standards or policies guiding General Services' decisions to grant or deny access to the grounds after 6:00 p.m. It was clearly established at the time of Plaintiffs' arrests that a permit or licensing scheme for use of a public forum for First Amendment speech must, at the very least, have definite standards to guide the licensing body.

The court also finds that *Edwards v. South Carolina* provided Defendants with adequate notice that arresting Plaintiffs was a violation of their First Amendment rights. 372 U.S. 229 (1963). In *Edwards*, the United States Supreme Court overturned the criminal convictions of 187 protestors who were arrested while peacefully protesting on the State House grounds. *Id.* The Court found that the protestors' First Amendment rights were violated when they were arrested for the offense of breach of peace, an offense "so generalized as to be, in the words of the South Carolina Supreme Court, 'not susceptible of exact definition.'" *Id.* at 237. The Court explained that the criminal convictions were not the result of "the evenhanded application of a precise and narrowly drawn regulatory statute evincing a legislative judgment that certain specific conduct be limited or proscribed." *Edwards*, 372 U.S. at 236. The court finds that the arrests of Plaintiffs for trespass is comparable to the arrests for breach of peace in *Edwards*. It was clear that arresting Plaintiffs for trespass when they were protesting on the State House grounds after 6:00 p.m. was not "the

---

[17] In fact, as explained in its Memorandum Opinion on Plaintiffs' Motion for Preliminary Injunction, the Conditions were not accessible on the Internet or otherwise posted or available to the public, to provide notice that a permit was required to remain on the grounds after 6:00 p.m. Even if the Conditions were available to the public, the Conditions did not explain the procedures an applicant must follow to receive a permit.

16

evenhanded application of a precise and narrowly drawn regulatory statute" proscribing specific conduct. *Edwards* establishes that protestors' First Amendment rights cannot be trumped by the application of vague and generalized criminal statutes, such as trespass, which makes it "unlawful to use the State House or grounds for any purpose not authorized by law," especially when unauthorized uses are allegedly defined by an unpublished list of Conditions.[18]

It is undisputed that the state can restrict camping and sleeping on the State House grounds, *see Clark*, 468 U.S. at 293, and that the state can restrict the time when the State House grounds are open to the public, *see Edwards*, 372 U.S. at 230. Neither, however, was restricted in this case. When the facts are viewed in Plaintiff's favor, the Third Amended Complaint suggests that Plaintiffs were arrested when they were simply protesting as part of Occupy Columbia. The court finds that it was clearly established that Plaintiffs had a First Amendment right to protest absent a valid time, place, and manner restriction. Contrary to Defendants' position, there was no time restriction on protesting on the State House grounds after 6:00 p.m. Even if Condition 8 were a time restriction, it was clearly established that such a time restriction – as an unpublished, vague permitting scheme without any standards to guide the decision maker – was unconstitutional. Finally, the court cannot ignore Governor Haley's letter, which ordered the arrests of members of Occupy Columbia, and not anyone violating the purported time restriction in Condition 8. At the time of Plaintiffs' arrests, it was clearly established that closing the State House grounds to one group was unconstitutional.

---

[18] The court notes that the protestors in *Edwards* were convicted of breach of peace whereas all charges against Plaintiffs were dropped shortly after their arrests. Just as in *Edwards*, however, Plaintiffs' First Amendment rights to "free speech, free assembly, and freedom to petition for redress of their grievances" were violated when they were arrested and removed from the State House grounds. The fact that the charges were ultimately dropped, therefore, does not affect the court's analysis.

The court, therefore, denies Defendants' motion to dismiss Plaintiffs' claims for money damages based on qualified immunity.[19]

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. The court grants Defendants' motion to dismiss Plaintiffs' claims for injunctive relief as moot. The court denies Defendants' motion to dismiss Plaintiffs' claims for money damages based on qualified immunity. Should the parties need additional time for discovery as a result of this order, the parties shall move to amend the Second Amended Scheduling Order prior to the expiration of discovery on February 28, 2013.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 7, 2013

---

[19] Plaintiffs argue that "[i]t is plain as day that it is unlawful and a violation of a person's civil rights to arrest the person or order his or her arrest where the person has committed no crime." Dkt. No. 108 at 15. Although Plaintiffs allege that their arrests were in violation of their First and Fourth Amendment rights, Plaintiffs have not specifically briefed the issue of how their Fourth Amendment rights were violated, including whether the arresting officers lacked probable cause. *See* Dkt. No. 108 at 11 (stating that "Plaintiffs were unlawfully arrested without probable cause" but not making any legal argument to that effect).

Similarly, Defendants have not argued that the arresting officers had probable cause to arrest Plaintiffs. Even after the court's invitation, Defendants have not briefed the issue of qualified immunity specific to each group of Defendants: the Governor, heads of law enforcement divisions, and arresting officers. Defendants' motion to dismiss based on qualified immunity is, therefore, denied as to all Defendants.